# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE



**FILED**

November 13, 1998

Cecil W. Crowson
Appellate Court Clerk

TIMOTHY A. BALTZ,        )
                              )
      Plaintiff/Appellant,    )
                              )    Maury Juvenile
                              )    No. 326-28-157
VS.                      )
                              )    Appeal No.
                              )    01A01-9606-JV-00263
PAM BALTZ KNIGHT,    )
                              )
      Defendant/Appellee.    )

APPEAL FROM THE JUVENILE COURT
FOR MAURY COUNTY
AT COLUMBIA, TENNESSEE

THE HONORABLE GEORGE LOVELL, JUDGE

For Plaintiff/Appellant:

William S. Fleming
Columbia, Tennessee

For Defendant/Appellee:

Claudia S. Jack
Columbia, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves the authority of the Maury County Juvenile Court to modify an Arkansas court's decree involving the custody of two children. Five years after the children and their mother moved to Tennessee, the father filed a petition in the Maury County Juvenile Court seeking sole custody and child support. The juvenile court entered an agreed order on September 8, 1995, granting each of the parents custody of one of their daughters. However, approximately eight months later, the juvenile court determined that it lacked subject matter jurisdiction to modify the Arkansas custody decree and vacated its September 8, 1995 order. The father has appealed. We agree that the Maury County Juvenile Court did not have subject matter jurisdiction over this matter and, therefore, affirm the juvenile court's decision invalidating its own order.

## I.

Pam Baltz Knight and Timothy A. Baltz were married in Jefferson County, Arkansas, in 1972. Their two daughters were born in 1981 and 1985. On January 13, 1989, the Chancery Court for Jefferson County, Arkansas, granted Ms. Knight an absolute divorce and awarded her custody of the parties' children. Mr. Baltz received reasonable visitation rights and was ordered to pay child support. In January 1990, Ms. Knight and her daughters moved to Tennessee and have lived here ever since. In 1993, Mr. Baltz moved to Georgia. Thus, Arkansas has had no connection with either the parties or their children since 1993.

During the summer of 1995, Ms. Knight voluntarily entered a treatment center for alcohol dependency. Before entering the center, she and Mr. Baltz agreed that Mr. Baltz would care for the children at his home in Georgia while she was in treatment. In August 1995, the older daughter returned to Tennessee to live with her mother, but the younger daughter remained in Georgia with Mr. Baltz. On August 14, 1995, Mr. Baltz filed a petition in the Maury County Juvenile Court seeking custody of the parties' children and child support. He alleged that there had been a material change of circumstances and that the parties had agreed it would be in the children's best interests to award him custody. On September 8, 1995, the juvenile court entered an agreed order granting the parties joint custody of their children and awarding Ms. Knight primary physical custody of the older child and Mr. Baltz primary physical custody of the younger child.

On March 8, 1996, Ms. Knight requested the juvenile court to declare its September 8, 1995 order void because it lacked subject matter jurisdiction.[1] She also filed a petition in the Chancery Court for Maury County seeking to enroll and enforce the Arkansas custody decree[2] as well as a petition for writ of habeas corpus to require Mr. Baltz to return the younger child to Tennessee.[3] On April 25, 1996, the juvenile court entered an order declaring its September 8, 1995 order void. Mr. Baltz has appealed, arguing that the juvenile court had subject matter jurisdiction under Tennessee's version of the Uniform Child Custody Jurisdiction Act and its concurrent jurisdiction with the probate court.

## II.

Because this appeal involves an interstate child custody dispute, we must first determine whether any Tennessee court may exercise jurisdiction. The answer to this question requires us to consider both Tennessee's[4] and Arkansas's[5] version of the Uniform Child Custody Jurisdiction Act and the federal Parental Kidnaping Prevention Act.[6] The common purpose of these statues is to avoid jurisdictional competition and conflict among courts in matters of child custody and to assure that custody litigation takes place in the state with which the child and the child's family have the closest connection. *See* Tenn. Code Ann. § 36-6-201(a)(1), -201(a)(3).

A Tennessee court has jurisdiction to render an initial custody decision or to modify a custody decision of a court of another state if Tennessee is the child's home state at the time of the commencement of the proceeding. *See* Tenn. Code Ann. § 36-6-203(a)(1)(A). Even though both the Uniform Child Custody Jurisdiction Act and the Parental Kidnaping Prevention Act strongly favor continuing jurisdiction in the court that rendered the initial custody decision, they recognize that courts of other states may modify these decrees in carefully controlled circumstances. *See Brown v. Brown*, 847 S.W.2d 496, 505 (Tenn. 1993).

---

[1]Tenn. R. Civ. P. 12.08 permits defenses challenging a court's subject matter jurisdiction to be raised at any time. *See Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Boyd v. Boyd*, 653 S.W.2d 732, 737 (Tenn. Ct. App. 1983).

[2]The federal Parental Kidnaping Prevention Act permits the enrollment and enforcement of foreign custody decrees. *See* 28 U.S.C.A. § 1738A(a) (West 1994); *Young v. Smith*, 939 S.W.2d 576, 577 (Tenn. Ct. App. 1996).

[3]The proceedings in chancery court have been continued.

[4]*See* Tenn. Code Ann. §§ 36-6-201, -225 (1996).

[5]*See* Ark. Code Ann, §§ 9-13-201, -228 (1998).

[6]*See* 28 U.S.C.A. § 1738A (West 1994).

In order for a court in this state to have jurisdiction to modify the custody decree of a court of another state, the court must first find:

    (1)    that the court that rendered the initial custody decree no longer has jurisdiction over the case under the laws of that state or has declined to assert jurisdiction;

    (2)    that the children and the parents do not reside in the state that rendered the initial custody decree; and

    (3)    that the courts of this state have jurisdiction.

*See* 28 U.S.C.A. § 1738A(d); Tenn. Code Ann. § 36-6-215(a).

The Arkansas version of the Uniform Child Custody Jurisdiction Act permits Arkansas courts to exercise custody jurisdiction if Arkansas is the child's home state or if Arkansas has a significant connection to the child and either or both parents. See Ark. Code Ann. § 9-13-203; *Young v. Smith*, 939 S.W.2d at 578. The statute specifically permits Arkansas courts to modify a custody decision if

> It is in the best interest of the child that a court of this state assume jurisdiction because (I) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, housing, and personal relationships.

*See* Ark. Code Ann. § 9-13-203(a)(2). The Arkansas Supreme Court has construed this section to provide that the courts that entered an initial custody order do not retain continuing modification jurisdiction if the parties and the children are living in another state. *See Davis v. Davis*, 687 S.W.2d 843, 846 (Ark. 1985).

There is little question under the facts of this case that Tennessee's courts have the jurisdiction to modify the initial custody decree entered by the Arkansas chancery court on January 13, 1989. Arkansas is no longer the residence of Ms. Knight, Mr. Baltz or their children, and the record contains no evidence that the children have maintained any sort of connection with Arkansas since they moved to Tennessee with their mother in January 1990. Under Arkansas law, the Arkansas courts no longer have jurisdiction over custody issues. However, the Tennessee courts have jurisdiction over these issues by virtue of the fact that Tennessee became the children's home state.[7] Accordingly, we conclude that Tennessee's

---

[7]Mr. Baltz appears to have recognized that Tennessee was both children's home state when he filed his custody petition in August 1995. At that time, the parties' younger daughter had not been living in Georgia for six months; therefore, Georgia was not yet the child's home state. Even if Georgia is now the younger daughter's home state, the Uniform Child Custody Jurisdiction Act and the Parental Kidnaping Prevention Act would require Georgia courts to defer to the Tennessee proceeding. *See* Tenn. Code Ann. § 36-6-207.

courts may properly assert subject matter jurisdiction over the custody dispute between Mr. Baltz and Ms. Knight.

## III.

We now turn to the question of the Maury County Juvenile Court's jurisdiction to modify the Arkansas custody decree. Mr. Baltz asserts that Tenn. Code Ann. § 37-1-104(a)(2) (Supp. 1998) gives the juvenile court subject matter jurisdiction over custody issues such as this one. We have determined that Mr. Baltz has read too much into Tenn. Code Ann. § 37-1-104(a)(2).

### A.

The concept of subject matter jurisdiction involves a court's power to adjudicate a particular type of controversy. *See Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d at 639; *Turpin v. Conner Bros. Excavating Co.*, 761 S.W.2d 296, 297 (Tenn. 1988); *Standard Sur. & Cas. Co. v. Sloan*, 180 Tenn. 220, 230, 173 S.W.2d 436, 440 (1943). Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act, *see Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977); *Brown v. Brown*, 198 Tenn. 600, 618-19, 281 S.W.2d 492, 501 (1955), and cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication. *See Hicks v. Hicks*, No. 01A01-9309-CH-00417, 1994 WL 108896, at *2 (Tenn. Ct. App. Mar. 30, 1994) (No Tenn. R. App. P. 11 application filed).

A court's subject matter jurisdiction in a particular circumstance depends on the nature of the cause of action and the relief sought. *See Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). It does not depend on the conduct or agreement of the parties. *See Shelby County v. City of Memphis*, 211 Tenn. 410, 413, 365 S.W.2d 291, 292 (1963); *James v. Kennedy*, 174 Tenn. 591, 595, 129 S.W.2d 215, 216 (1939). Judgments or orders entered by courts without subject matter jurisdiction are void, *see Brown v. Brown*, 198 Tenn. at 610, 281 S.W.2d at 497; *Riden v. Snider*, 832 S.W.2d 341, 343 (Tenn. Ct. App. 1991), and the lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated. *See* Tenn. R. Civ. P. 12.08.

### B.

Juvenile courts are courts of limited jurisdiction, *see Stambaugh v. Price*, 532 S.W.2d 929, 932 (Tenn. 1976), whose subject matter jurisdiction is defined by statute. The General Assembly has given juvenile courts exclusive subject matter jurisdiction over ten specific

types of proceedings, including delinquency proceedings, dependency and neglect proceedings, and paternity proceedings. *See* Tenn. Code Ann. § 37-1-103 (Supp. 1998). However, this statute does not, either explicitly or by necessary implication, give juvenile courts subject matter jurisdiction over custody matters independent of one of the proceedings listed therein.

The General Assembly has also given juvenile courts concurrent jurisdiction with the general sessions courts over one type of proceeding,[8] and concurrent jurisdiction with the circuit and chancery courts over three types of proceedings.[9] It has also given juvenile courts concurrent jurisdiction with probate courts over three types of proceedings.[10] None of these statutes explicitly give juvenile courts concurrent jurisdiction to modify custody orders entered in the context of a divorce proceeding.

Mr. Baltz, however, asserts that the juvenile court's concurrent jurisdiction with the probate courts "to determine custody or appoint a guardian of the person of a child" under Tenn. Code Ann. § 37-1-104(a)(2) empowers juvenile courts to modify custody decrees entered by courts of other states. We disagree. A juvenile court's subject matter jurisdiction under Tenn. Code Ann. § 37-1-104(a)(2) derives directly from the probate court's jurisdiction under Tenn. Code Ann. §§ 34-12-101, -106 (1996) to appoint a guardian for a child. Custody is an integral part of a guardianship proceeding because the purpose of the proceeding is to appoint a person who will become legally responsible for the care and management of a child during his or her minority. Persons appointed as guardians cannot carry out their responsibilities without being given legal custody of their ward. Since Mr. Baltz did not initiate a guardianship proceeding in this case, he cannot rely on Tenn. Code Ann. § 37-1-104(a)(2) to provide the juvenile court subject matter jurisdiction to modify the Arkansas custody decision.

Courts with subject matter jurisdiction over suits for annulment, divorce, or separate maintenance have jurisdiction to decide the custody issues arising during these proceedings. *See* Tenn. Code Ann. § 36-6-101(a)(1) (Supp. 1998). Only circuit courts, chancery courts, and courts whose jurisdiction has been otherwise conferred by general or local act have this

---

[8]*See* Tenn. Code Ann. § 37-1-104(b) (Supp. 1998) (contributing to the delinquency or unruly conduct of a minor).

[9]*See* Tenn. Code Ann. § 37-1-104(c), (d), (e) (termination of parental or guardianship rights, orders of support for minor children, and proceedings arising from the 1980 Hague Convention on the Civil Aspects of International Child Abduction).

[10]*See* Tenn. Code Ann. § 37-1-104(a) (treatment of mentally ill or retarded children, guardianships, and judicial consent for marriage).

jurisdiction. *See* Tenn. Code Ann. §§, 16-10-108, 16-11-110 (1994). Unless a juvenile court is exercising exclusive jurisdiction under Tenn. Code Ann. § 37-1-103, it cannot interfere with a custody decision made in the context of a divorce proceeding. *See In re Maddron*, No. 77, 1991 WL 135467, at *4 (Tenn. Ct. App. July 25, 1991) (No Tenn. R. App. P. 11 application filed).[11] Just as juvenile courts may not modify a custody decision of a Tennessee court unless they are exercising their authority pursuant to Tenn. Code Ann. § 37-1-103, we hold that they have no subject matter jurisdiction to modify a foreign custody determination under Tenn. Code Ann. § 36-6-215 unless they are also proceeding under a provision of Tenn. Code Ann. § 37-1-103.

## IV.

The judgment of the Maury County Juvenile Court dismissing Mr. Baltz's petition for lack of subject matter jurisdiction is affirmed and the case is remanded for whatever further proceedings may be required. We tax the costs of this appeal to Timothy A. Baltz and his surety for which execution, if necessary, may issue.

---

[11]Mr. Baltz cites two unreported opinions for the proposition that Tenn. Code Ann. § 37-1-104(a)(2) gives juvenile courts subject matter jurisdiction to modify custody decrees entered by courts of other states. Neither of these cases hold that Tenn. Code Ann. § 37-1-104(a)(2) vests this jurisdiction in juvenile courts, and therefore, we do not view them as controlling.

The first case, *Carpenter v. Carpenter*, No. 133, 1989 WL 139721 (Tenn Ct. App. Nov. 16, 1989) (No Tenn. R. App. P. 11 application filed), involves the jurisdiction of the Chancery Court for Hamblen County to place a child in the custody of one of two couples seeking to adopt it after the other couple had been awarded temporary custody in an earlier proceeding in the Hamblen County Juvenile Court. The couple who had been awarded custody by the juvenile court argued that the chancery court could not assume jurisdiction because the juvenile court retained exclusive jurisdiction under Tenn. Code Ann. § 37-1-103(a)(1). A panel of this court disagreed because the juvenile court had determined that the children were not dependent and neglected, abandoned, or abused. The panel speculated that the juvenile court must have been exercising jurisdiction under Tenn. Code Ann. § 37-1-104(a)(2). *See Carpenter v. Carpenter*, 1989 WL 139721, at *2. Because the children were apparently abandoned by their natural parents, it is understandable that the panel could have concluded that the juvenile court's custody decision was, in effect, a guardianship proceeding.

The second case is more factually akin to the present tone. A mother filed a petition in the Juvenile Court of Memphis and Shelby County requesting the court to modify an Arkansas court's custody decree. The issue on appeal involved the juvenile court's decision to decline jurisdiction because the Arkansas court had refused to waive jurisdiction over the case. A panel of this court held that a Tennessee court could take jurisdiction over the petition because Tennessee had become the children's home state and because the Arkansas proceeding failed to comply with the Parental Kidnaping Prevention Act. *See In re Bilsky*, No. 02A01-9407-JV-00155, 1994 WL 699035, at *4 (Tenn. Ct. App. Dec. 15, 1994) (No Tenn. R. App. P. 11 application filed). There is no indication in the opinion that either the parties or the panel addressed the specific question of the Shelby County Juvenile Court's subject matter jurisdiction.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
SAMUEL L. LEWIS, JUDGE